S11G1681, S11G1683. HOOVER v. MAXUM INDEMNITY
COMPANY (two cases).
(730 SE2d 413)

HUNSTEIN, Presiding Justice.

James Matthew Hoover sustained a serious brain injury on October 20, 2004 when he fell while climbing down from the roof of a residence while working for his employer, Emergency Water Extraction Services, LLC ("EWES"). At the time of the accident, EWES held a commercial liability insurance policy issued by Maxum Indemnity Company. Maxum denied coverage and refused to defend, citing the policy's Employer Liability Exclusion.

After Hoover obtained a $16.4 million negligence judgment against EWES, he filed suit against Maxum pursuant to an assignment of claims from EWES, asserting breach of the duty to defend and seeking indemnification. The trial court granted both Maxum's motion for summary judgment finding that EWES failed to provide timely notice of the occurrence and Hoover's motion for partial summary judgment finding that Maxum breached its duty to defend the underlying tort action. The Court of Appeals affirmed the trial court's grant of summary judgment on the timely notice issue and reversed the grant of summary judgment on the issue of Maxum's duty to defend. *Hoover v. Maxum Indemnity Co.*, 310 Ga. App. 291 (712 SE2d 661) (2011).

We granted certiorari to determine whether the Court of Appeals properly analyzed the claim that Maxum waived its right to assert a defense based on untimely notice and whether timely notice of the occurrence was a prerequisite to Maxum having a duty to defend in the underlying tort action. We reverse as to the notice issue, finding that Maxum waived its right to assert a defense based on untimely notice because it did not properly alert EWES that the lack of timely notice would be a potential bar to coverage. We also reverse the Court of Appeals' decision regarding Maxum's duty to defend, finding that since Maxum waived its right to assert a defense related to EWES's failure to give timely notice of the occurrence, timely notice of the occurrence was not a prerequisite to Maxum's duty to defend.

Hoover fell from a ladder while descending from a roof on October 20, 2004, causing a serious brain injury. At the time of the accident, Hoover was employed by EWES. Hoover's supervisor asked him to deliver a ladder to a job site where an independent roofing contractor was making repairs on the roof. Hoover delivered the ladder and the roofer asked him to come to the roof to assist with the repairs. Hoover complied. After several minutes, the roofing contractor asked Hoover to retrieve some materials from the ground. Hoover fell as he was descending the ladder. Hoover's duties as a water extraction technician for EWES did not include climbing on ladders or making roof repairs.

EWES's co-owner, Jeff Owen, visited Hoover in the hospital on the day of the accident. There, Owen spoke with Hoover's stepfather, Jerry McEntee, who was an insurance agent. McEntee requested EWES's insurance information and told Owen that he would be contacting Maxum to verify the policy and coverage under the policy. About a week later, McEntee told Owen that he had notified Maxum of the occurrence and had discovered that EWES's policy with Maxum had a $1 million liability limit.

On September 22, 2006, Hoover filed a personal injury lawsuit against EWES and others.[1] Hoover served EWES with a copy of the complaint and EWES's attorney forwarded the complaint to Maxum. Maxum asserts that its first notice of Hoover's injury was EWES's correspondence dated October 19, 2006 enclosing the complaint.[2]

On October 23, 2006, Maxum responded by disclaiming coverage under the policy and informing EWES that it would not be providing

---

[1] During the intervening two years, Hoover pursued a workers' compensation claim, which was ultimately unsuccessful because EWES did not have workers' compensation insurance.

[2] Because we find that Maxum waived its right to assert a defense based on untimely notice of the occurrence, the issue of when Maxum received notice is moot.

a defense or indemnification, citing the policy's Employers Liability Exclusion as the basis for refusing to defend. The letter also purports to reserve Maxum's right to claim a number of other defenses, including that "coverage for this matter may be barred or limited to the extent the insured has not complied with the notice provisions under the policy." The notice provision under the policy provides, "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." The denial letter further stated:

> Maxum's specific enumeration of the above policy defenses is not intended as a waiver of any other policy defenses that Maxum may have or that may arise from facts discovered in the future[,] nor should Maxum be estopped from raising additional coverage defenses. Maxum also continues to reserve the right to raise any other coverage defenses, including the right to disclaim coverage on any other basis that may become apparent as this matter progresses and as Maxum obtains additional information.

On February 14, 2007, Maxum filed a declaratory judgment action against EWES.[3] Maxum did not include failure to comply with the notice provisions as a reason for denying coverage in its complaint in that action. Instead, Maxum simply stated that EWES's claims were precluded by the Employer's Liability Exclusion. Maxum did cite EWES's failure to comply with the notice provisions of the policy as a defense in its answer to the third-party lawsuit filed by EWES and in its answer to the complaint in the instant lawsuit. However, in its motion for summary judgment in the third-party action, Maxum again asserted only the Employer Liability Exclusion as a basis for denying coverage.

1. Under Georgia law, where an insurer is faced with a decision regarding how to handle a claim of coverage at the same time a lawsuit is pending against its insured, the insurer has three options. First, the insurer can defend the claim, thereby waiving its policy defenses and claims of non-coverage. *Gant v. State Farm Mut. Auto Ins. Co.*, 109 Ga. App. 41, 43-44 (134 SE2d 886) (1964). Second, the insurer can deny coverage and refuse to defend, leaving policy defenses open for future litigation. *Southern Guar. Ins. Co. v. Dowse*, 278 Ga. 674 (1) (605 SE2d 27) (2004). Or, third, the insurer can defend

---

[3] The declaratory judgment action was later dismissed because an action does not lie following an outright denial of coverage.

under a reservation of rights. Id. at 676 (insurer "had a choice when timely notified of the claim pending against its insured — either defend under a reservation of rights or decline to defend"). An insurer cannot both deny a claim outright and attempt to reserve the right to assert a different defense in the future. See *Browder v. Aetna Life Ins. Co.*, 126 Ga. App. 140, 144 (2) (190 SE2d 110) (1972) ("ultimate denial of liability on another ground constitutes a waiver of forfeiture based on lack of timely notice"). Cf. *Morgan v. Guaranty Nat. Cos.*, 268 Ga. 343, 344 (489 SE2d 803) (1997) (insurer cannot deny a claim and then seek declaratory judgment to determine the propriety of the denial; declaratory judgment is only available where the insurer undertakes a defense but is uncertain how to handle the claim).

A reservation of rights is a term of art in insurance vernacular and is designed to allow an insurer to provide a defense to its insured while still preserving the option of litigating and ultimately denying coverage. *National Union Fire Ins. Co. v. American Motorists Ins. Co.*, 269 Ga. 768, 769 (1) (504 SE2d 673) (1998). "At a minimum, the reservation of rights must fairly inform the insured that, *notwithstanding [the insurer's] defense of the action*, it disclaims liability and does not waive the defenses available to it against the insured." *World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*, 287 Ga. 149, 152 (1) (695 SE2d 6) (2010) (Citation and punctuation omitted; emphasis supplied). Thus, a reservation of rights is only available to an insurer who undertakes a defense while questions remain about the validity of the coverage.

The Court of Appeals erred when it held, contrary to Georgia law, that Maxum could both deny the claim and reserve its right to assert other defenses later. When an insurer is presented with notice of a claim and demand for a defense, the "proper and safe course of action . . . is to enter upon a defense under a reservation of rights and then proceed to seek a declaratory judgment in its favor." *Richmond v. Georgia Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 217 (1) (231 SE2d 245) (1976). Maxum failed to properly reserve its rights to assert a notice defense when it denied EWES's claim on the grounds of the Employer Liability Exclusion and refused to undertake a defense.

The disclaimer language in Maxum's denial letter purporting to reserve its rights to assert certain defenses later was *not* a reservation of rights in the sense that term is used in the insurance industry. The dissent's assertion that a reservation of rights in the context of a denial of coverage is "a standard and acceptable means of determining one's rights" is a misstatement of the law. As the court held in *Richmond*, supra, the standard and acceptable procedure for an

insurer to determine its rights is to *agree to defend* under a reservation of rights and then file a declaratory judgment action. *Richmond*, 140 Ga. App. at 217.

The dissent's reliance on *Brazil v. Govt. Employees Ins. Co.*, 199 Ga. App. 343, 344 (2) (404 SE2d 807) (1991) is also inapposite. The facts in the present matter are readily distinguishable from the facts in *Brazil*. In *Brazil*, the court held that a reservation of rights was unnecessary during the brief period when the insurer was trying to determine whether it would defend the insured or deny coverage. Id. at 344. Here, a reservation of rights was unavailable because Maxum had already denied coverage outright.

Additionally, the dissent's statement that a situation like this one is "why a reservation of claims exists in the first place" further demonstrates the dissent's fundamental misunderstanding of a reservation of rights. A reservation of rights does not exist so that an insurer who has *denied coverage* may continue to investigate to come up with additional reasons on which the denial could be based if challenged. Rather, a reservation of rights exists to protect both the insurer and the insured by allowing an insurer who is uncertain of its obligations under the policy to undertake a defense while reserving its rights to ultimately deny coverage following its investigation or to file a declaratory judgment action to determine its obligations. *Gant*, 109 Ga. App. at 43-44.

2. Even if the Court of Appeals had been correct in allowing Maxum to both deny coverage and reserve its rights to assert other defenses in the future, Maxum's attempted reservation of rights was defective. In order to inform an insured of the insurer's position regarding its defenses, a reservation of rights must be unambiguous. *World Harvest Church*, 287 Ga. at 152. "[I]f it is ambiguous, the purported reservation of rights must be construed strictly against the insurer and liberally in favor of the insured." Id. at 152-153 (Citations and punctuation omitted). A reservation of rights is not valid if it does not fairly inform the insured of the insurer's position.

Therefore, even if the dissent were successful in its attempt to broaden the definition of a reservation of rights to encompass what Maxum attempted to do in its October 23, 2006 letter, Maxum's notice here is still inadequate because it did not unambiguously inform EWES that Maxum intended to pursue a defense based on untimely notice of the claim. The boilerplate language in the denial letter purporting to reserve the right to assert a myriad of other defenses at a later date did not clearly put EWES on notice of Maxum's position. The letter denies coverage on the one hand, yet states on the other hand that Maxum reserves "the right to disclaim coverage on any other basis *that may become apparent as this matter progresses and*

*as Maxum obtains additional information.*" (Emphasis supplied.) Once the claim has been denied, the matter would not progress and Maxum would have no need to obtain additional information unless it was later served with a third-party complaint with regard to coverage. Construed liberally in favor of the insured, the purported "reservation of rights" is invalid.

3. The Court of Appeals also erred when it failed to construe the notice provision in the general liability policy against Maxum. Georgia courts do not favor forfeitures in construing insurance contracts. *James v. Pennsylvania Gen. Ins. Co.*, 167 Ga. App. 427, 431 (2) (306 SE2d 422) (1983). Rather, courts infer waiver of non-essential parts of an insurance contract that are penal in nature. *New York Underwriters Ins. Co. v. Noles*, 101 Ga. App. 922, 925 (115 SE2d 474) (1960). Courts strictly construe provisions of the contract that benefit the insurer and find even "small circumstances" show waiver by the insurance company. *Norfolk & Dedham Mut. Fire Ins. Co. v. Cumbaa*, 128 Ga. App. 196, 198 (1) (196 SE2d 167) (1973).

In Maxum's October 23, 2006 letter denying coverage on the grounds of the Employer Liability Exclusion, it included a disclaimer purporting to reserve its rights to raise a litany of other defenses at a later date, including a defense predicated on the insured's failure to provide timely notice of the occurrence. However, when Maxum filed its declaratory judgment action, it did not mention a defense based on untimely notice of the occurrence. During the discovery period in the underlying tort claim, Maxum did not investigate whether EWES gave Maxum notice of the occurrence as soon as practicable as required under the policy. Finally, when it moved for summary judgment in the underlying tort action, Maxum's sole basis for asserting it was entitled to summary judgment was based on the Employer Liability Exclusion in the policy. These facts are undisputed.

Thus, despite ample opportunity during the underlying tort litigation to notify EWES of its intent to raise a defense based on improper or untimely notice of the occurrence, Maxum chose to focus solely on the Employer Liability Exclusion. Maxum's continued failure to fairly inform EWES of its intention to raise a defense related to untimely notice means Maxum waived the defense and, therefore, Hoover was entitled to summary judgment on the issue of notice.

4. Having determined that Maxum waived its right to assert a defense based on untimely notice, we conclude that the Court of Appeals erred when it reversed the trial court's order holding that Maxum breached its duty to defend. The trial court properly recognized that whether an insurer has a duty to defend depends on the

language of the policy as compared with the allegations of the complaint. See *Auto-Owners Ins. Co. v. State Farm Fire & Cas. Co.*, 297 Ga. App. 751, 754 (678 SE2d 196) (2009). "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494, 497 (1) (646 SE2d 682) (2007) (Citation and punctuation omitted).

Maxum's initial denial letter cites the Employer Liability Exclusion of the policy as the basis for denying coverage. The clause excludes coverage for bodily injury to "(1) An employee of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business." The nature of EWES's business and the circumstances of the accident, described in the fact section above, make clear that Hoover was not performing duties related to the conduct of the insured's business at the time of the accident.

The trial court was obligated to strictly construe the language of the policy exclusion in favor of the insured. *Penn-America Ins. Co. v. Disabled American Veterans, Inc.*, 268 Ga. 564, 565-566 (490 SE2d 374) (1997). When the trial court compared the language of the policy exclusion to the claim asserted in the complaint, it found that "the claim as asserted can reasonably be construed as not having arisen out of and in the course of [Hoover's] employment with EWES or of duties related to the conduct of EWES' business in terms of the policy exclusion." As a result, the trial court correctly concluded that Maxum had a duty to defend the underlying tort action and that Maxum breached that duty. The Court of Appeals' holding to the contrary was incorrect.

*Judgment reversed. All the Justices concur, except Hines, Melton, and Nahmias, JJ., who concur specially in part and dissent in part.*

MELTON, Justice, concurring specially in part and dissenting in part.

Contrary to the majority opinion, Georgia law does not broadly provide that "an insurer cannot both deny a claim outright and reserve the right to assert a different defense in the future." As this pivotal statement of the law is incorrect and creates a new rule contrary to established precedent both in Georgia and a large majority of other jurisdictions, I disagree with all of the majority's analysis.

1. For its integral, novel, and unprecedented proposition, the majority cites *Browder v. Aetna Life Ins. Co.*, 126 Ga. App. 140 (190 SE2d 110) (1972), with a parenthetical quote stating "ultimate denial of liability on another ground constitutes a waiver of forfeiture based

on the lack of timely notice." This citation treatment makes it appear that this was a holding in *Browder*.

It was not.

The facts of *Browder* show that, on June 13, 1967, the insurance company, Aetna Life, wrote a letter to its insured denying coverage based on his failure to provide adequate notice. Aetna's claims department reconsidered, and, in July of 1967, an agent of Aetna wrote a letter to the insured explicitly stating that the notice requirement "would not have much bearing on this case." At this time, the insured was required to procure certain medical information, which he did. On January 23, 1968, Aetna sent its insured a separate letter stating that it was conducting further investigation under a full reservation of rights. Finally, on April 5, 1968, Aetna acted on the medical information it had been provided and wrote to its insured, denying liability on the sole ground that the injury was not the result of a compensable accident.

On these facts, the following holding was issued:

> The position of the insurance company as of July, 1967 is contained in a letter to the plaintiff from the Wilcox agency stating the insurer's claims department "have informed me that the 20 day clause for reporting your claim would not have much bearing on this case" and requesting information as to accidental injury because "the policy requires that you be totally disabled within 20 days." The defendant admits that the letter "is a true copy of what it purports to be" but objects to it as hearsay and denies that the writer has any authority to speak for the defendant or interpret its policy. The letter is not hearsay. Whether it correctly relays the position and instructions of the home office is a matter for determination on the trial of the case. The relaying of the company's instructions and position was, at the very least, within the apparent authority of the local agent. Acting on the information, the plaintiff procured the requested medical information. The insurer acted on this and declined liability on the sole ground that the disability did not result from accident. Under the ruling in *Cordell v. Metropolitan Life Ins. Co.*, 54 Ga. App. 178 (1, 5) (187 SE 292) [(1936)], causing the insured to procure and transmit information of the type called for and received here amounts to a waiver of the timeliness of notice. "All this investigation would have been useless if the defendant intended to insist that the plaintiff could not maintain an action because of failure to comply with the conditions of the group policy in regard to

notice, proof of disability and time of bringing action. Waiver is simply an election not to insist on the forfeiture of the insurance." Id. at 185.

*Browder*, supra. In turn, *Cordell*, on which *Browder*'s holding is based, acknowledges that this is largely an estoppel concept. Therefore, the Georgia law actually set forth in *Browder* is that an insurance company implicitly waives a notice provision when, despite its knowledge of a notice problem, it requires the insured to undergo tests and procedures as if there is no intention to enforce the notice provision. On the other hand, "[e]ven without disclaiming liability and giving notice of its reservation of rights, *any* insurer who merely proceeds to investigate a claim with knowledge of facts which might otherwise constitute a defense to coverage is not estopped from thereafter setting up the defense." (Emphasis in original.) *Brazil v. Govt. Employees Ins. Co.*, 199 Ga. App. 343, 344 (2) (404 SE2d 807) (1991).

As an aside, *Browder* does observe generally:

> And, to the effect that an ultimate denial of liability on another ground constitutes a waiver of forfeiture based on lack of timely notice, see also *Paetz v. London Guar. &c. Co.*, 228 Mo. App. 564 (71 SW2d 826) [(1934)]; *Blazek v. North American Life & Cas. Co.*, 251 Minn. 130 (87 NW2d 36) [(1957)]; *American Cas. & Life Co. v. Butler*, 215 SW2d 392 (Tex. Civ. App. [1948]).

This is not a statement of Georgia law. It is merely an observation of law in other jurisdictions. It was unnecessary to the holding in *Browder*, and it is equally unnecessary here.

In addition to the clear Georgia precedent cited above, a majority of other jurisdictions also hold that an insurer does not waive policy defenses such as notice simply because it does not list all such defenses in its letter denying coverage. *Shahan v. Shahan*, 988 SW2d 529, 534 (Mo. 1999) (filing by insurer of complaint that does not raise particular coverage defense does not constitute a waiver of that defense); *Waller v. Truck Ins. Exchange, Inc.*, 900 P2d 619, 636 (C) (1) (Cal. 1995) ("of the 33 sister states to consider the issue, 32 agree" that "[a]n insurer does not impliedly waive coverage defenses it fails to mention when it denies the claim"); *Guberman v. William Penn Life Ins. Co. of New York*, 146 AD2d 8, 12 (538 NYS2d 571) (1989) ("rule of estoppel is limited in its application to those instances where the insured has suffered some degree of prejudice as a result of the insurer's attempt to shift its defense from one basis to another");

*Ladd Constr. Co. v. Ins. Co. of North America*, 73 Ill. App. 3d 43, 50-51 (391 NE2d 568) (1979) ("An insurance company is not required to raise all possible defenses in its letter to the insured. Failure to raise all defenses does not result in a per se waiver of the same."); *Consolidated Rail Corp. v. Hartford Acc. & Indem. Co.*, 676 FSupp. 82, 85 (E.D. Pa. 1987) ("waiver cannot operate to expand coverage under an insurance policy"); *State of Miss. ex rel King v. Richardson*, 634 FSupp. 133, 136 (S.D. Miss. 1986) (reliance on another ground to deny coverage did not waive insurer's right to deny coverage because of late notice); *City of Pigeon Forge, Tenn. v. Midland Ins. Co.*, 788 F2d 368, 371 (II) (6th Cir. 1986) (defense of lack of timely notice not waived because it was not mentioned in the insurer's declination of coverage letter).

The question in this case, then, is whether, in the light most favorable to EWES, the evidence points to some action or statement on the part of Maxum evincing an intent to waive the notice provision. "What would be material to the waiver issue is evidence that, after it finally received notice from [the insured], Maxum otherwise expressly or impliedly took a position indicative of its intent not to enforce satisfaction of the timely notice requirement." *Brazil*, supra, 199 Ga. App. at 343 (1). Certainly, Maxum's reservation of rights shows no such intent, as it explicitly references the policy's notice requirement. Nonetheless, Maxum later filed a declaratory judgment action in which it appeared to abandon its notice defense, irrespective of its earlier reservation of rights. This is, at least, some evidence of Maxum's intent to waive the notice defense which, under the required standard of review, would preclude a grant of summary judgment in Maxum's favor. I agree, therefore, that the Court of Appeals erred in affirming the grant of summary judgment on this point as a question of fact remains.

2. I also disagree with the ramifications of the majority's reasoning behind its conclusion that, even if the Court of Appeals had been correct in allowing Maxum to both deny coverage and reserve its rights to assert other defenses in the future, Maxum's attempted reservation of rights is defective. The majority reasons that: (1) the language purporting to reserve rights to assert defenses on other grounds in the future is ambiguous; (2) once the claim has been denied, Maxum would presumably have no reason to obtain additional information; and (3) as a result, EWES had no reason to believe that lack of timely notice would be a bar to coverage. This conclusion is illogical. In any contract litigation, the bare assertion of one defense does not waive every other defense available. Maxum would have every reason to obtain additional information to determine whether other grounds existed for denial of EWES's claim. That is why a

reservation of claims exists in the first place. In the context of any denial of any claim by any insurer, a reservation of rights to uncover additional defenses under the course of a challenge is not at all ambiguous. It is a standard and acceptable means of determining one's rights, often through litigation and discovery, when facts become evident. Under the majority's reasoning, an insurance company could deny a claim based on one defense, discover during litigation that, but for the fraud of the insured, it could have raised another defense, and be unable to raise the new defense simply because it was not explicitly asserted the moment that the claim was denied. The mere assertion of one defense cannot be considered the waiver of other defenses, absent some statement or conduct *showing an intent to waive*. That is the premise of the very case on which the majority bases its analysis. *Browder*, supra.

3. In turn, I disagree that Hoover was entitled to summary judgment that the notice issue had been waived. As stated above, in its reservation of rights, Maxum explicitly stated that *it did not intend to waive its notice provision*. Viewed in the light most favorable to Maxum on this issue, the evidence therefore raises a question of fact as to whether Maxum actually waived its defense. See, e.g., *Mxenergy, Inc. v. Ga. Public Svc. Comm.*, 310 Ga. App. 630 (3) (714 SE2d 132) (2011) (waiver and notice are questions of fact). Summary judgment in favor of Hoover would be patently improper.

4. Furthermore, because a question of fact exists whether Maxum waived its notice defense, there is also a question of fact and law whether Maxum breached its duty to defend EWES. If the notice defense was not waived, Maxum would not have a duty to defend. If the notice defense was waived, it may have. In any event, this question cannot be decided without first addressing waiver. Moreover, this issue was not within our certiorari questions, was not briefed by the parties, and was not considered by the Court of Appeals. The majority's premature consideration of this issue, therefore, is wholly unwarranted.

5. It must also be emphasized that the practical effects of the majority's holding will be as far-reaching as they are negative. Based on the majority's new rule of law, insurers who wish to deny coverage will be forced to attempt to list all defenses in their initial denial letter. They must do so blindly, in the absence of necessary information and the discovery later litigation might provide. This result helps neither the insurance company, which must scramble to come up with all possible defenses in good faith, nor the insured, who will have no good context of where he or she stands in the face of a laundry list of defenses. The result may also increase the number of instances in which an insurance company seeks to reserve rights, rather than

deny a claim, and subsequently seek a declaratory judgment regarding coverage. This will only serve to further clog trial courts. Simply put, no good will come from the majority's unprecedented new rule of law. That alone is good reason not to make it.

For all of the reasons set forth above, I concur specially in part and dissent in part.

I am authorized to state that Justice Hines and Justice Nahmias concur in this opinion.

DECIDED JUNE 18, 2012 —
RECONSIDERATION DENIED JULY 26, 2012.

*Robertson, Bodoh & Nasrallah, Mathew G. Nasrallah, Lance A. Cooper*, for appellant.

*Freeman, Mathis & Gary, Philip W. Savrin, Joshua B. Portnoy*, for appellee.