**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**March 29, 2013**

# In the Court of Appeals of Georgia

A12A2377. FACILITY INVESTMENTS, LP f/k/a FACILITY INVESTMENTS, LLC et al. v. HOMELAND INSURANCE CO. OF NEW YORK

MILLER, Presiding Judge.

Homeland Insurance Company of New York filed this action against its insured, Facility Investments d/b/a Westminster Commons (hereinafter "Facility") seeking to recover damages for breach of contract, and seeking to recoup amounts it paid to resolve claims against Facility that it contends were not covered under Facility's insurance policy. Facility filed a motion to dismiss, arguing that Homeland failed to state a claim upon which relief can be granted. The trial court denied Facility's motion.

We granted Facility's application for interlocutory appeal to consider the propriety of the trial court's order. On appeal, Facility contends that (1) the trial court

erred in denying its motion to dismiss because Homeland's claims are barred by the voluntary payment doctrine and the doctrine of waiver, and (2) the trial court erred in creating a cause of action to allow an insurer to recoup money it paid to settle uncovered claims on behalf of its insured. For the reasons that follow, we reverse the trial court's ruling.

We review a trial court's ruling on a motion to dismiss de novo and construe the challenged pleading in favor of the party who filed it. See *Northway v. Allen*, 291 Ga. 227, 229 (728 SE2d 624) (2012).

> A motion to dismiss pursuant to OCGA § 9-11-12 (b) (6) will not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

 (Citation and punctuation omitted.) Id.

So viewed, the record reflects that Homeland issued a Long-term Care Organization's Professional and General Liability policy (hereinafter "the Policy") to Facility which provided up to $1 million in coverage for Facility's nursing home. The Policy excluded coverage for dishonest, fraudulent, criminal or intentionally

2

malicious acts, errors or omissions, and willful violations of law, statutes, rules or regulations.

Facility was subsequently sued for professional negligence arising from the care of a patient at its nursing home (hereinafter "the underlying case"). The complaint in the underlying case alleged that Facility engaged in fraud, intentional misconduct and willful and wanton conduct. Homeland agreed to defend Facility in the underlying suit under a reservation of rights. Homeland expressly reserved its rights with regard to losses or defense expenses arising out of allegations of fraud, malice or violations of State and Federal regulations. However, Homeland did not reserve any right to pursue claims for breach of contract, recoupment, allocation or contribution.

The plaintiffs in the underlying case developed evidence of fraud with respect to the nursing home patient's medical chart. Plaintiffs' counsel in the underlying case sent a letter demanding payment of the $1 million Policy limit within 30 days to settle the claims against Facility. The demand letter indicated that based on evidence of fraud, the underlying plaintiffs were entitled to punitive damages. The underlying plaintiffs also indicated that if the demand amount was not paid within the 30-day time limit, they would seek to enforce a verdict in excess of the Policy limit.

Three days before expiration of the 30-day demand, Facility sent a letter to Homeland requesting that Homeland settle the underlying suit within the Policy limit. Facility's letter noted that discovery in the underlying suit had revealed several major hurdles for the defense, including significant charting problems, which were likely to inflame a jury. In the letter, Facility opined that these hurdles, in combination with alleged special damages in excess of $800,000, would likely lead to a judgment in excess of the Policy limit.

The next day, Homeland responded to Facility's request with an offer to settle the case for an amount up to the Policy limit. Referring to the Policy's terms, Homeland noted that Facility was obligated to determine a fair and proper allocation of all amounts attributable to covered and uncovered losses (hereinafter the "uncovered loss allocation provision"). Homeland asked Facility to contribute 50 percent of the settlement amount based on Homeland's opinion that a significant portion of the claimed loss was not covered under the Policy due to Facility's fraudulent charting. Homeland noted that in the event the parties could not reach an agreement with respect to allocation, it was still obligated to make an interim payment of the amount of the loss that the parties agree is not in dispute. Homeland stated for

the first time that it would pursue recoupment/contribution in the event that Facility did not pay its share for the uncovered losses.

On the day before expiration of the 30-day demand, Facility notified Homeland that it would not contribute to a settlement, or otherwise allocate between covered and uncovered losses, because Homeland was obligated to settle the underlying suit on Facility's behalf. Homeland sent another letter indicating its reservation of rights to pursue claims for breach of contract, recoupment, allocation and contribution. Homeland then made the required interim payment to settle the underlying suit.

Thereafter, Homeland filed the instant suit to recover from Facility the portion of the settlement amount attributable to uncovered losses. Specifically, Homeland alleged that Facility breached the Policy's terms by failing to contribute to the settlement amount, and that Facility was required to reimburse Homeland for the uncovered losses. Homeland further alleged that Facility breached its contractual obligation to indemnify Homeland for uncovered losses, based on the uncovered loss allocation provision.

Facility moved to dismiss Homeland's complaint for failure to state a claim, contending that Homeland waived it claims, Homeland's claims were barred by the voluntary payment doctrine, and Homeland's claim for recoupment is not cognizable

5

under Georgia law. The trial court denied Facility's motion, finding that the voluntary payment doctrine did not bar Homeland's claims at this state of the litigation, and that Facility failed to show that Homeland waived its right to pursue recovery of the non-covered portion of the settlement payment. The trial court also found that Homeland's claim for recoupment did not fail at this stage of the litigation.[1] This Court granted Facility's application for interlocutory review of the trial court's decision.

1. On appeal, Facility contends that the trial court erred in denying its motion to dismiss, because Homeland waived its right to pursue the uncovered amounts of the settlement payment when it made such payment with knowledge of the circumstances that gave rise to its coverage defense. We agree.

The Policy, which Homeland attached to its complaint and incorporated therein by reference, contained the following pertinent provisions:

III. EXCLUSIONS

(D) Exclusions Applicable to ALL INSURING AGREEMENTS

Except as otherwise expressly provided in this Policy, this Policy does not apply to, and the Underwriter will not pay **Loss** or Defense Expenses

---

[1] The trial court also rejected Facility's contention that Homeland failed to state a claim for breach of contract, finding that the amended complaint raised an issue as to whether Facility was required to pay a portion of the settlement.

6

for any Claim based upon, or arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged: . . .

(3) dishonest, fraudulent, criminal or intentionally malicious act, error or omission by an insured; any willful violation of law, statute, rule or regulation by an Insured; or the gaining of any profit, remuneration or advantage by any Insured to which such Insured was not legally entitled, including but not limited to, health care fraud; provided, however, that no such act of one Insured will be imputed to any other Insured who was not aware of and did not participate in such act.

## IV. GENERAL CONDITIONS

(D) Defense and Settlement: . . .

(3) If both Loss covered by this Policy and Loss not covered by this policy are incurred, either because a Claim made against the Insureds includes both covered and uncovered matters, or because a Claim is made against both Insureds and others not included within the definition of "Insured" set forth in DEFINITION (Q) above, the Insured Entity, the Insured Persons and the Underwriter agree to use their best efforts to determine a fair and proper allocation of all such amounts. The Underwriter's obligation to pay Loss under this Policy shall relate only to those sums allocated to the Insureds. In making such determination, the parties shall take into account the legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the Claim by the Insured Persons, the Insured Entity and

others. In the event that the Underwriter and the Insureds do not reach an agreement with respect to an allocation, then the Underwriter shall be obligated to make an interim payment of the amount of Loss which the parties agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this policy and applicable law.

The policy defined "Loss" to include any settlement Facility was legally obligated to pay, but did not include defense expenses.

"Where the language of a contract is plain and unambiguous, . . . no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance." (Citations and punctuation omitted.) *Richard Bowers & Co. v. Creel*, 280 Ga. App. 199, 200-201 (1) (633 SE2d 555) (2006); see also *Canton Plaza, Inc. v. Regions Bank, Inc.*, 315 Ga. App. 303, 308-309 (3) (732 SE2d 449) (2012) (if a contract is clear and unambiguous, courts are to simply enforce the contract according to its clear terms). Here, the express terms of the Policy excluded losses and defense expenses arising out of fraudulent conduct. Homeland was aware that the plaintiffs were seeking punitive damages for fraudulent conduct. Homeland nevertheless agreed to defend Facility in the underlying suit under a reservation of rights.

Under Georgia law, where an insurer is faced with a decision regarding how to handle a claim of coverage at the same time a lawsuit is pending against its insured, the insurer has three options. First, the insurer can defend the claim, thereby waiving its policy defenses and claims of non-coverage. Second, the insurer can deny coverage and refuse to defend, leaving policy defenses open for future litigation. Or, third, the insurer can defend under a reservation of rights. . . . A reservation of rights is a term of art in insurance vernacular and is designed to allow an insurer to provide a defense to its insured while still preserving the option of litigating and ultimately denying coverage. At a minimum, the reservation of rights must fairly inform the insured that, notwithstanding the insurer's defense of the action, it disclaims liability and does not waive the defenses available to it against the insured. Thus, a reservation of rights is *only* available to an insurer who undertakes a defense *while questions remain* about the validity of the coverage.

(Citations and punctuation omitted, emphasis supplied.) *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 404-405 (1) (730 SE2d 413) (2012). Moreover,

a reservation of rights exists to protect both the insurer and the insured by allowing an insurer who is uncertain of its obligations under the policy to undertake a defense while reserving its rights to ultimately deny coverage following its investigation or to file a declaratory judgment action to determine its obligations. . . . In order to inform an insured of the insurer's position regarding its defenses, a reservation of rights must be unambiguous. If it is ambiguous, the purported reservation of rights must be construed strictly against the insurer and

9

liberally in favor of the insured. A reservation of rights is not valid if it does not fairly inform the insured of the insurer's position.

(Citation and punctuation omitted). Id. at 406 (1), (2). Risks not covered by or excluded from an insurance policy are not normally subject to the doctrine of waiver and estoppel. See *Prescott's Altama Datsun, Inc. v. Monarch Ins. Co.*, 253 Ga. 317, 318 (319 SE2d 445) (1984). However, where an insurer does not unambiguously reserve it rights, uncovered claims may be subject to the doctrine of waiver or estoppel if the insurer assumes the defense of an action or continues such defense with knowledge that a claim is not covered. See *World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*, 287 Ga. 149,153 (2) (695 SE2d 6) (2010); *Prescott's*, supra, 253 Ga. at 318.

Here, Homeland defended Facility in the underlying case, knowing that the plaintiffs asserted claims for losses that were not covered under the Policy. Homeland undertook defense of the case subject to a reservation of rights letter, which specifically reserved its rights with regard to losses or defense expenses arising out of allegations of fraud. However, this letter did not provide Facility with any notice that Homeland intended to settle an uncovered claim and sue for reimbursement/contribution under the uncovered loss allocation provision. Thus,

10

Homeland did not unambiguously reserve its rights under that provision, and any attempt to reserve additional Policy defenses based on boilerplate language in the letter was ineffective. See *Hoover*, supra, 291 Ga. at 406 (2); see also *World Harvest Church*, supra, 287 Ga. at 152-153 (1).

Homeland contends that it reserved its rights under the uncovered loss allocation provision in its subsequent letter to Facility on the day before it settled the underlying case. Homeland further contends that Facility did not object to the reservation of rights or the settlement terms. Notwithstanding Homeland's arguments, the record clearly shows that Homeland unilaterally reserved its rights under the uncovered loss allocation provision after Facility objected to any allocation of covered and uncovered claims, and after Facility informed Homeland that it would not contribute to the settlement.

> An insurer may not give an insured a unilateral notice of reservation of rights and thereupon proceed with a complete defense [and settlement] of the main claim absent [the] insured's express or implied consent. This course of action may well result in prejudice to an insured. Upon learning of facts reasonably putting it on notice that there may be grounds for noncoverage and where the insured refuses to consent to a defense under a reservation of rights, the insurer must thereupon (a) give the insured proper unilateral notice of its reservation of rights, (b) take necessary steps to prevent the main case from going into default or to

11

prevent the insured from being otherwise prejudiced, and (c) seek immediate declaratory relief including a stay of the main case pending final resolution of the declaratory judgment action.

(Punctuation omitted). *Richmond v. Georgia Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 219 (1) (231 SE2d 245) (1976). Under *Hoover*, a reservation of rights gives an insurer who is uncertain of its obligations to provide coverage, the ability to investigate. Once such investigation shows uncovered claims, however, the insurer can deny coverage or file a declaratory judgment action to determine its obligations. See *Hoover*, supra, 291 Ga. at 406 (1).

Here, Homeland learned of facts giving grounds for noncoverage. At the time Homeland sent its subsequent reservation of rights letter, the claims of fraud were supported by evidence. When Facility refused to contribute to Homeland's proposed settlement of the underlying case, Homeland had only two options at that point: deny coverage or seek immediate declaratory relief. See *Hoover*, supra, 291 Ga. at 406 (1); see also *Richmond*, supra, 140 Ga. App. at 219 (1) (holding that an insurer must seek immediate declaratory relief where the insurer had notice of grounds for non-coverage and the insured refuses to consent to a defense under a reservation of rights).

Homeland defended and settled the underlying suit with knowledge of the uncovered claims, and without specifically reserving its rights with regard to the uncovered loss allocation provision. Since Homeland settled the case, rather than denying coverage or seeking declaratory judgment, Homeland waived any right to seek reimbursement for uncovered amounts of the settlement. See *World Harvest*, supra, 287 Ga. at 156 (2) (holding that an insurer is estopped from asserting the defense of non-coverage where the insurer assumed or continued the defense of a suit with actual knowledge of non-coverage). Accordingly, the trial court erred in denying Facility's motion to dismiss Homeland's suit.

2. Facility also contends that the voluntary payment doctrine barred Homeland's claims and that the trial court erred in creating a cause of action allowing an insurer to recoup money it paid to settle uncovered claims on behalf of its insured. Because we find that Homeland waived any right to seek reimbursement for uncovered amounts of the settlement, we need not address these additional contentions.

*Judgment reversed, Ray and Branch, JJ., concur in the judgment only.*