**NORTH AMERICAN SPECIALTY INSURANCE COMPANY, Plaintiff-Counter Defendant-Appellant Cross Appellee,**

v.

**BULL RIVER MARINA, LLC, et al., Defendants,**

**Mark Allen Wells, Mr. Douglas Pitts, Defendants-Counter Claimants-Appellees Cross Appellants,**

**Ms. Yvonne Wells, Defendant-Counter Claimant-Appellee.**

**No. 16-10738**
**Non-Argument Calendar**

United States Court of Appeals, Eleventh Circuit.

(September 27, 2017)

John R. Catizone, Litchfield Cavo, LLP, Fort Lauderdale, FL, Shaun M. Daugherty, Freeman Mathis & Gary, LLP, Atlanta, GA, for Plaintiff-Appellant

Noble L. Boykin, Jr., Sherri Naomi Trinh, Jones Boykin & Associates, PC, Savannah, GA, for Defendants-Appellees-Cross Appellants Douglas Pitts, Mark Allen Wells

Noble L. Boykin, Jr., Jones Boykin & Associates, PC, Savannah, GA, for Defendant-Appellee Yvonne Wells

Before JORDAN, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

North American Specialty Insurance Company, Mark Wells, and Douglas Pitts, appeal the district court order granting in part and denying in part their respective and opposing motions for summary judgment.

Bull River Marina, LLC held two North American insurance policies: a commercial general liability policy (50C0005405-00) and a marina operators policy (50M0005405-00). North American filed this action seeking a declaratory judgment that neither policy required it to defend or indemnify Bull River in four underlying state suits.[1]

Both sides moved for summary judgment, each contending that the 50C and 50M policies did or did not apply. The district court granted North American partial summary judgment after it determined that the two policies did not cover the accident that generated the four state cases. The district court ruled, however, that North American was estopped from denying coverage under the 50M policy in *Mark Allen Wells v. Bull River Marina, et al.*, No. STCV1100788 (Chatham Cty. Ct. Apr. 7, 2011), and awarded Mr. Wells partial summary judgment on that ground. After careful consideration, we affirm the partial summary judgment granted to North American and reverse the partial summary judgment granted to Mr. Wells.

I

This case largely turns on the language of the reservation-of-rights letters sent by North American. For the most part, the relevant facts are undisputed.

---

1. The four state cases, in chronological order, are *Mark Allen Wells v. Bull River Marina, et al.*, No. STCV1100788 (Chatham Cty. Ct. Apr. 7, 2011); *Yvonne Wells v. Bull River Marina, et al.*, No. STCV1201594 (Chatham Cty. Ct. Sep. 4, 2012); *Douglas Pitts v. Bull River Marina, et al.*, No. STCV1201585 (Chatham Cty. Ct. Sep. 13, 2012); *Mark Allen Wells v. Christopher Tanner*, No. STCV1201595 (Chatham Cty. Ct. Sep. 17, 2012).

Yvonne Wells was a party in the district court. Although she joined the briefs and motions filed by Mr. Wells and Mr. Pitts in the district court, she is not appealing the district court's ruling that North American was not required to defend or indemnify Bull River under both policies in her state case.

## A

Mr. Wells, Mr. Pitts, and others went on an offshore fishing trip provided by Bull River. The excursion encountered rough seas. At one point, the expedition's catamaran, the *Nauti-Dawg*, collided with a large wave. The impact vaulted Mr. Wells and Mr. Pitts from their seats, causing them serious physical injuries. This incident, which occurred on September 19, 2009, is the genesis of the four state cases against Bull River.

## B

Bull River, through its insurance broker, notified North American of the incident by completing a standard form notice where it listed, as the only coverage for the claim, the 50C policy. North American assigned Cheryl Moore as the claim adjuster. She preliminarily discussed the incident with Fred Tanner, Bull River's chief executive officer, but closed the file after a period of no contact from Bull River on the matter.

Then, in April of 2011, Mr. Wells filed his first state suit against Bull River (No. STCV1100788), prompting Bull River to contact North American again and send it copies of the summons and complaint. North American sent Bull River its first reservation-of-rights letter on May 19, 2011, which listed only the 50C policy on the subject line and stated, in pertinent part:

> Due to the allegations contained in the complaint, we need to undertake an in depth review of the policy to determine if coverage is triggered under these circumstances.... In the interim, we have assigned [a law firm] to enter an appearance in court on your behalf and to protect your interests in accordance with the terms of your policy. However,

we are providing a defense of this action under a complete Reservation of Rights, including the right to withdraw from the defense should it be determined no coverage is afforded....

> [T]he preceding statement of the company's position with respect to coverage is not intended, nor shall it be construed, as a waiver or relinquishment of any term, provision, exclusion or condition of any policy pertaining to this matter, nor of any other right or a defense the company may have under the circumstances....

D.E. 82-1 at 1. The parties agree that the letter did not reference the 50M policy. *See* Br. of Mr. Wells and Mr. Pitts at 13; Br. of North American at 10.

North American sent Bull River a second reservation-of-rights letter on April 4, 2012. That second letter listed both the 50C and 50M policies on the subject line, explained why North American believed neither applied, and concluded by stating that "[a]lthough [North American] believes that the above-referenced exclusions bar any coverage for the allegations made in [Mr.] Wells' complaint, [North American] will continue to defend this matter subject to a strict reservation of rights to deny coverage...." D.E. 82-2 at 8. The April 4th letter further "expressly reserve[d] ... the right to assert any and all additional [policy] provisions or parts thereof that might also apply." *Id.*

In October of 2012, after the last three state cases were filed, North American sent two more reservation-of-rights letters outlining its coverage position under both policies. One letter was sent to Bull River and the other to Chris Tanner, Bull River's registered agent.[2]

---

2. There is a factual dispute over whether the letters were sent to the correct addresses. Mr.

Wells and Mr. Pitts argue that, if the letters were mailed to the wrong address, the reser-

### C

North American filed this declaratory judgment action on May 23, 2012. It moved for summary judgment on the ground that neither the 50C policy nor the 50M policy required it to defend or indemnify Bull River on any of the claims asserted in the four underlying state suits. *See* D.E. 60. Mr. Wells and Mr. Pitts opposed that motion and filed a cross-motion for summary judgment, in which they argued, among other things, that North American had waived, and was estopped from asserting, its coverage defenses because its first reservation-of-rights letter was legally deficient and because it undertook the defense of Bull River in the state cases without first adequately reserving its rights. *See* D.E. 75 at 2 ¶ 4; Br. of Mr. Wells and Mr. Pitts at 6.

The district court partially granted North American's motion for summary judgment, ruling that the insurance company was not required to defend or indemnify Bull River in any of the four state cases under the 50C policy. The district court also concluded that, to the extent estoppel did not apply, North American likewise was not required to defend or indemnify Bull River in any of the four state cases under the 50M policy.

But the district court did find that estoppel applied and granted Mr. Wells partial summary judgment. The district court declared that North American was estopped from arguing non-coverage under the 50M policy because the May 19th reservation-of-rights letter had been ineffective. It also declared that estoppel applied because North American had denied coverage under the 50M policy while simultaneously reserving its right to raise new grounds for non-coverage, in violation of

*Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 730 S.E.2d 413 (2012).

This appeal followed.

### II

We exercise plenary review over a district court's grant of summary judgment. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). In doing so, we draw all inferences and review all of the evidence in the light most favorable to the non-moving party. *Id.* The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute of any material fact and that it is entitled to judgment as a matter of law. *Id.*

### III

The parties appeal the partial summary judgment granted to one another. Mr. Wells and Mr. Pitts do not challenge the district court's determination that, to the extent estoppel does not apply, the 50C and 50M policies do not cover Bull River for the underlying accident. Rather, the parties' arguments concern whether North American is subject to estoppel for undertaking Bull River's defense in the underlying state cases with defective reservation-of-rights letters. We first address whether and to what extent North American is estopped from denying coverage under the 50C policy. We then answer the same questions for the 50M policy.

### A

■ The district court determined that, as to Mr. Wells' first suit (No. STCV1100788), North American sufficiently reserved its rights under the 50C policy with the May 19th letter. *See* D.E. 114 at 11–14. Mr. Wells insists that the May 19th letter was ineffective. He contends that

vations are ineffective. Because we agree with the district court's legal resolution of this

issue, we discuss the dispute later in the opinion.

that letter was ambiguous because it was unclear whether a defense was being provided under the 50C policy, and that such ambiguity must be construed as a failure by North American to effectively reserve its rights. Mr. Wells also argues that the letter was ineffective because it was only a "statement of future intent" to reserve rights. *See* Br. of Mr. Wells and Mr. Pitts at 23. Neither argument is convincing.

Under Georgia law, an insurer can "avoid estoppel by giving timely notice of its reservation of rights which fairly informs the insured of the insurer's position." *World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*, 287 Ga. 149, 152, 695 S.E.2d 6 (2010) (internal quotation marks omitted) (quoting *State Farm Fire & Cas. Co. v. Walnut Ave. Partners, LLC*, 296 Ga. App. 648, 653, 675 S.E.2d 534 (2009)). "At a minimum, the reservation of rights must fairly inform the insured that, notwithstanding [the insurer's] defense of the action, it disclaims liability and does not waive the defenses available to it against the insured." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *State Farm Mut. Auto. Ins. Co. v. Anderson*, 104 Ga. App. 815, 818, 123 S.E.2d 191 (1961)).

In this case, the May 19th letter sufficiently notified Bull River of North American's coverage position under the 50C policy. Mr. Wells' argument—that it was unclear what policy was being discussed—rings hollow. The letter clearly referenced the 50C policy. In fact, North American authored the letter *in response* to a claim submitted by Bull River pursuant to the 50C policy. Even more obviously, the 50C policy appeared on the letter's subject line. It was the only policy specifically referenced anywhere.

The letter also informed Bull River that North American was actively assuming the defense of the underlying suit. The language of the letter belies the argument that it spoke only to future intent. It specifically stated that North American's adjusters "have *assigned* [a law firm]" to represent Bull River and that, although they "*are* providing a defense," it is subject to a "complete [r]eservation of [r]ights." D.E. 82-1 at 1 (emphasis added). By styling the letter in past and present tense, North American was clearly committing itself to a defense of Bull River at that time.

Mr. Wells points to a portion of the letter explaining that North American adjusters would "need to undertake an in depth review of the policy to determine if coverage is triggered under [the circumstances alleged in the complaint]." *Id.* To Mr. Wells, this indicates that no reservation of rights was actually made at that time because North American had not yet determined whether there was even a basis for reservation. But this confounds making a reservation with providing the basis for reservation. Although an insurer "*should* . . . inform the insured of the specific basis for [its] reservations about coverage," *World Harvest*, 287 Ga. at 152, 695 S.E.2d 6, it need not actually do so. The May 19th letter expressly stated, twice, that North American's defense of Bull River (through the assigned law firm) was under a reservation of right to deny coverage and withdraw the defense. Other Georgia appellate decisions—some relied upon by the Georgia Supreme Court in *World Harvest*—have found similarly broad language to constitute an –effective reservation of rights. *See generally Wellons, Inc. v. Lexington Ins. Co.*, 566 Fed. Appx. 813, 821–22 (11th Cir. 2014) (discussing *World Harvest* and collecting Georgia cases).

In summary, the May 19th letter did exactly what Georgia law required. It informed Bull River that North American

had actively assumed defense of the state case, but that the defense was subject to a right to reject the 50C policy claim at some point in the future. Accordingly, we affirm the partial summary judgment declaring that North American adequately reserved its right to deny Bull River coverage under the 50C policy in *Wells v. Bull River Marina*, No. STCV110078.

**B**

■ Mr. Wells and Mr. Pitts maintain that Bull River and Chris Tanner never received the third reservation-of-rights letters issued by North American in October of 2012, thus rendering them ineffective. And, the argument goes, because North American assumed the defenses of *Pitts v. Bull River Marina*, No. STCV1201585, and *Wells v. Christopher Tanner*, No. STCV1201595, without effective reservations, the insurance company is now estopped from denying coverage under either policy.

The district court thoroughly disposed of these issues in its summary judgment order. It explained, for instance, that North American mailed the letters to Chris Tanner, as Bull River's registered agent, at the address listed for him on the Georgia Secretary of State's website. *See* D.E. 114 at 18. This alone warrants affirmance. *See* Ga. Code § 14-2-504 (providing for service of process to a corporation's registered agent); Ga. Code § 14-2-502 (placing the burden on the corporation to update its registered address).

More problematically for Mr. Wells and Mr. Pitts, the district court's conclusion that North American had effectively reserved its rights through the October 2012 letters also rested on a separate, independent ground. Specifically, the district court ruled that North American's motion to amend its complaint in the declaratory judgment action also constituted notice of

a reservation of rights under *World Harvest. See* D.E. 114 at 19. Mr. Wells and Mr. Pitts' initial brief failed to challenge that alternative ground, so they cannot obtain reversal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014) (requiring appellants to challenge all grounds on which a decision rests). Accordingly, we affirm the district court's declaration that, under both policies, North American need not defend or indemnify Bull River in *Douglas Pitts v. Bull River Marina, et al.*, No. STCV1201585 (Chatham Cty. Ct. Sep. 13, 2012), and *Mark Allen Wells v. Christopher Tanner*, No. STCV1201595 (Chatham Cty. Ct. Sep. 17, 2012).

**C**

■ The district court determined that North American was estopped from denying coverage under the 50M policy in Mr. Wells' first state suit (No. STCV1100788) because it undertook Bull River's defense without first reserving its rights. This is how it arrived at that decision. The district court first found that the May 19th letter was ambiguous. Then, it invoked *World Harvest* for the proposition that ambiguities have to be construed in favor of the insured. Construing the purportedly ambiguous May 19th letter in favor of Bull River, the district court concluded that the letter failed to reserve North American's rights under the 50M policy. And by the time North American sent its second reservation-of-rights letter in April of 2012 (which specifically reserved rights under the 50M policy), North American had already assumed Bull River's defense, so the district court concluded that estoppel applied. That conclusion rests on one critical flaw: the notion that North American actually assumed Bull River's defense under the 50M policy *before* the April 4th letter.

The general rule under Georgia law is that estoppel cannot create liability for a risk not covered under an insurance contract. *See Andrews v. Georgia Farm Bureau Mut. Ins. Co.*, 226 Ga. App. 316, 317, 487 S.E.2d 3 (1997). But when an insurer, "without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of noncoverage," estoppel prevents the insurer from denying coverage. *See Prescott's Altama Datsun, Inc. v. Monarch Ins. Co. of Ohio*, 253 Ga. 317, 318, 319 S.E.2d 445 (1984).

This is not a situation that falls within the narrow exception announced in *Prescott's*. Even assuming that the statement in the May 19th letter—"[North American's assignment of a law firm to defend Bull River] is not intended, nor shall it be construed, as a waiver or relinquishment of any term, provision, exclusion or condition of *any* policy pertaining to this matter," D.E. 82-1 at 1 (emphasis added)— was too ambiguous to reserve North American's rights under the 50M policy, we do not believe the letter was ambiguous as to which policy North American was assuming the defense under. As explained earlier, the letter—issued in response to a notice of claim that only listed the 50C policy—had the 50C policy as its subject. The letter also stated that North American had retained a law firm "to protect [Bull River's] interests in accordance with the terms of [its] *policy*"—not *policies*. *Id.* (emphasis added). Because the 50C policy was the sole policy mentioned in the letter, we believe that the only reasonable interpretation of this language is that the law firm was hired pursuant to the 50C policy. The May 19th letter, therefore, does not establish that North American assumed Bull River's defense under the 50M policy.

In addition to the letter, Mr. Wells cites testimony from Ms. Moore as evidence that North American assumed the defense of his first suit under the 50M policy. *See* Br. of Mr. Wells and Mr. Pitts at 30. But, as Mr. Wells himself notes, Ms. Moore admitted that she could not specifically recall anything she had said to Fred Tanner other than what the May 19th letter communicated. Her communications to Fred Tanner, then, were essentially a recitation of the May 19th letter.

In summary, we conclude that there is no evidence that North American defended Bull River against Mr. Wells' first suit under the 50M policy. We therefore decide, contrary to the district court, that the coverage-by-estoppel principle announced in *Prescott's* does not apply because North American never actually defended Bull River in *Mark Allen Wells v. Bull River Marina, et al.*, No. STCV1100788 (Chatham Cty. Ct. Apr. 7, 2011), under the 50M policy without first reserving its rights.

**D**

■ The district court's second basis for concluding that estoppel precluded North American from denying coverage under the 50M policy in Mr. Wells' first suit (No. STCV1100788) is that the insurance company violated the principle articulated in *Hoover*. The district court explained that, under *Hoover*, North American could not argue that the 50M policy did not cover the boating accident and at the same time issue the April 4th letter purporting to reserve the right to assert other defenses under that policy. *See* D.E. 114 at 15.

To be clear, the contention that the May 19th letter *denied* coverage under the 50M policy has been North American's litigation position. Everyone agrees that the May 19th letter did not mention the 50M policy. In its initial brief, North American argued that the May 19th letter's failure to mention the 50M policy could not amount to an ineffective reservation of rights under that policy when there was no reason

for the letter to mention the 50M policy in the first place. According to North American, the letter did not mention the 50M policy because "[t]he [p]olicy [w]as [n]ot [i]mplicated." Br. of North American at 12. That is the same argument the insurance company made below. *See* D.E. 89 at 5 ¶ 24.

The district court reasoned that, if the 50M policy "was never triggered, which [according to North American] justifies the absence of a reference to the policy in the May 19, 2011 letter," then North American had denied coverage in May of 2011 and then tried to reserve the right to raise other defenses under that same policy in the April 4, 2012 letter. D.E. 114 at 15. This, the district court held, violated *Hoover. See id.*

In *Hoover*, an employee sued his employer after suffering an injury at work. *See Hoover*, 291 Ga. at 402, 730 S.E.2d 413. The employer filed a claim with its insurer, which the insurer denied on the ground that the policy excluded liabilities owed to employees because of workplace injuries. The letter denying coverage also contained language purportedly reserving the right to assert other defenses. Later on, the insurer attempted to avoid coverage by raising a different defense—that the employer had failed to comply with the policy's notice requirement. The Supreme Court of Georgia held that the insurer had waived the notice defense by failing to assert it in the initial denial letter. That first letter's reservation of right (which should have allowed the insurer to raise the notice defense) was ineffective because an insurer could not both deny coverage on one ground and reserve the right to assert a different defense at some later time. *See id.* at 404–06, 730 S.E.2d 413.

This case is different than *Hoover*. Accepting that North American's contention—that the May 19th letter failed to reference the 50M policy because it was "[n]ot [i]mplicated"—is tantamount to a denial of coverage under the 50M policy—meaning that any purported reservation of rights in the May 19th letter was ineffective, *see id.* at 405, 730 S.E.2d 413 (explaining that a reservation of rights "is only available to an insurer who undertakes a defense")—we fail to see how *Hoover* mandates, as a remedy, that North American be estopped from denying coverage altogether. It seems to us that *Hoover* would only prohibit North American from asserting a policy defense under 50M that it should have raised the first time around. *See id.* at 405, 730 S.E.2d 413 ("[The insurance company] failed to properly reserve its rights to assert a *notice* defense when it [initially] denied [its insured's] claim on the grounds of [a policy exclusion] and refused to undertake a defense.") (emphasis added).

But the April 4th letter, in so many words, gave the same reason for noncoverage as North American did to explain why the May 19th letter had not mentioned the 50M policy: that the underlying accident is outside the 50M policy's scope of coverage. Because that has been North American's basis for noncoverage from the beginning, it is not subject to waiver or estoppel under *Hoover*. And so, we reverse the district court's determination that North American is estopped from denying coverage under the 50M policy. [3]

## IV

No one has appealed the district court's determination that, as a matter of contrac-

---

3. *Hoover* is distinguishable for another reason. In *Hoover*, the Supreme Court of Georgia held that the insurer waived a policy defense (the notice requirement) that it had failed to assert in its initial denial letter. North American, by contrast, is refusing to defend Bull River on the ground that the underlying accident is not covered by the terms of the 50M

tual interpretation, the 50C and 50M policies did not cover the underlying boating accident. The only questions on appeal are whether North American was estopped, for one reason or another, from denying coverage under the two policies.

We affirm the district court's partial summary judgment in favor of North American declaring that it need not defend or indemnify Bull River in any of the state cases under the 50C policy. We also affirm the district court's conclusion that North American need not defend or indemnify Bull River in *Douglas Pitts v. Bull River Marina, et al.*, No. STCV1201585 (Chatham Cty. Ct. Sep. 13, 2012), and *Mark Allen Wells v. Christopher Tanner*, No. STCV1201595 (Chatham Cty. Ct. Sep. 17, 2012), under the 50M policy.[4]

We reverse, however, the partial summary judgment granted to Mr. Wells declaring that North American is estopped from denying Bull River coverage under the 50M policy in the case of *Mark Allen Wells v. Bull River Marina, et al.*, No. STCV1100788 (Chatham Cty. Ct. Apr. 7, 2011).

**AFFIRMED IN PART AND REVERSED IN PART.**

policy. The Supreme Court of Georgia has previously drawn a distinction between raising policy defenses and contesting coverage altogether. See *S. Guar. Ins. Co. v. Dowse*, 278 Ga. 674, 676, 605 S.E.2d 27 (2004). In *Dowse*, the Georgia Supreme Court explained that an insurer that refuses to defend its insured waives certain policy protections, such as provisions prohibiting an insured from settling claims without the insurer's approval, but not the "right to contest its insured's assertion that the insurance policy provides coverage for the underlying claim. Obviously, if the underlying claim is outside the policy's scope of coverage, then [the insurer's] refusal to indemnify or defend was justified.... *This question of whether the policy provides coverage for the claim is separate from the legal consequences of an insurer's refusal to indemnify or defend.*" *Id.* (emphasis added and footnote omitted).

4. Again, Yvonne Wells did not appeal the district court's decision against her regarding *Yvonne Wells v. Bull River Marina, et al.*, No. STCV1201594 (Chatham Cty. Ct. Sep. 4, 2012).