S10Q0341. WORLD HARVEST CHURCH, INC. v. GUIDEONE MUTUAL INSURANCE COMPANY.

(695 SE2d 6)

CARLEY, Presiding Justice.

Between 1995 and 1999, Charles Richard Homa and Michael E. Gause operated an automobile title lending business which actually constituted a huge Ponzi scheme. See *SEC v. Homa,* 514 F3d 661, 664 (I) (A) (7th Cir. 2008). During that time, Gause donated large sums of money to World Harvest Church (Church), including a $1,000,000 wire transfer from an offshore bank account. The Securities and Exchange Commission (SEC) filed a civil enforcement

action in federal district court, Phillip Stenger was appointed Receiver, Homa and Gause consented to a civil judgment, and they also pled guilty to criminal charges of securities fraud.

The Receiver demanded that the Church return about $1.8 million of Gause's donations and, in November 2002, brought suit against the Church in an Illinois federal district court asserting claims of fraudulent transfer and unjust enrichment. GuideOne Mutual Insurance Company, who was the Church's commercial general liability insurer, was informed of that lawsuit. A sister company of GuideOne responded with a written reservation of the right to deny any and all liability, and ultimately concluded that the policy did not cover the Illinois action.

After that action was dismissed for lack of personal jurisdiction, the Receiver filed a similar action in January 2004 against the Church in the United States District Court for the Northern District of Georgia. Upon being informed thereof, GuideOne "split the file" between two claims adjusters, assigning coverage issues to Dale Hubbell and liability issues to Doug Sleezer. Hubbell testified that he explained the assignment of two claims adjusters to the Church's counsel and stated that "we didn't see coverage but we would have to evaluate what we have currently to see if there would be coverage issues." Without issuing a written reservation of rights, GuideOne then assumed the defense of the lawsuit for over 10 months, during which the time for discovery was extended to March 17, 2005.

On January 26, 2005, GuideOne informed the Church that it would stop defending the action in 30 days because there was no coverage. The Church hired its own attorneys to defend the lawsuit. When there was a month remaining in the discovery period, the new attorneys entered an appearance in the case, and they made a request to extend the discovery deadline, which the district court denied. About one month after that initial appearance, the Receiver filed a motion for summary judgment. The district court granted that motion and, about 17 months after the notice of appearance by the new lawyers, awarded damages in the amount of $1.8 million. An appeal was taken, but the Receiver and the Church later settled for a damages award of $1,000,000.

Three months later, in July 2007, the Church brought this action in the United States District Court for the Northern District of Georgia against GuideOne, alleging breach of the insurance contract and of its duty to indemnify and defend the lawsuit filed by the Receiver. The Church thereby attempted to force GuideOne to treat the earlier judgment in favor of the Receiver as covered under the Church's policy, even though it is undisputed that such judgment actually does not come within the terms of that policy. On cross-motions for summary judgment, the district court rejected the

Church's contention that GuideOne should be equitably estopped from denying coverage because it had represented the Church for almost 11 months without issuing a "reservation of rights." The district court found that GuideOne was free to raise a noncoverage defense because the Church had not shown that GuideOne's participation prejudiced the Church's defense. On appeal, the United States Court of Appeals for the Eleventh Circuit certified the following three questions to this court:

> (1) Does an insurer effectively reserve its right to deny coverage if it informs the insured that it does "not see coverage," after the insured had received a written reservation of rights from the insurer's sister company in a similar lawsuit in another jurisdiction, or is a written or more unequivocal reservation of rights required?
>
> (2) When an insurer assumes and conducts an initial defense without notifying the insured that it is doing so with a reservation of rights, is the insurer estopped from asserting the defense of noncoverage only if the insured can show prejudice, or is prejudice conclusively presumed?
>
> (3) If the insured must show prejudice, do the facts and circumstances of this case show it?

*World Harvest Church v. GuideOne Mut. Ins. Co.*, 586 F3d 950, 961 (II) (C) (11th Cir. 2009).

Prior to 1984, the precedent which is relevant to these issues was found only in previous opinions of the Court of Appeals of Georgia. Citing many of those opinions, this Court held in 1984

> that risks not covered by the terms of an insurance policy, or risks excluded therefrom, while normally not subject to the doctrine of waiver and estoppel, [cits.], may be subject to the doctrine where the insurer, without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of noncoverage, [cits.]

*Prescott's Altama Datsun v. Monarch Ins. Co. of Ohio*, 253 Ga. 317, 318 (319 SE2d 445) (1984).

1. The first question posed by the Eleventh Circuit is whether an insurer effectively reserves its rights to deny coverage under the circumstances set forth therein. The Church argues that *Vara v. Essex Ins. Co.*, 269 Ga. App. 417, 419 (a) (604 SE2d 260) (2004) requires that a reservation of rights be in writing. As the Eleventh Circuit recognized, however, the reference in *Vara* to written notifi-

cation is an isolated dictum which is unsupported by any other Georgia law. *World Harvest Church v. GuideOne Mut. Ins. Co.*, supra at 956 (II) (A), fn. 6. Although written notification is preferable, the complaint that the reservation of rights was inadequate because it was oral "is without legal authority, and we are unpersuaded that *actual* notice of a reservation of rights is ineffective without a confirming letter." (Emphasis in original.) *State Farm Fire and Cas. Co. v. Jioras*, 29 Cal. Rptr. 2d 840, 846 (II) (D), fn. 12 (Cal. App. 1994). See also 1 Allan D. Windt, *Insurance Claims and Disputes* 5th § 2:7 ("equivalent oral advice" sufficient).

" 'The insurer can avoid estoppel by giving timely notice of its reservation of rights which fairly informs the insured of the insurer's position.' [Cit.]" *State Farm Fire and Casualty Co. v. Walnut Avenue Partners*, 296 Ga. App. 648, 653 (4) (675 SE2d 534) (2009). See also 14 Lee R. Russ, *Couch on Insurance* § 202:47 (3rd ed.); 1 Windt, supra, § 2:14. That notice cannot be only a "statement of future intent . . . ." *Proudfoot v. Cotton States Mut. Ins. Co.*, 230 Ga. 169, 171 (3) (196 SE2d 131) (1973). Furthermore, a "mere allegation that the insurer contended that [the insured] was not covered by the policy, without more, [does] not show any reservation on its part of a right to insist that the coverage of the policy was not extended to him." *Jones v. Ga. Casualty & Surety Co.*, 89 Ga. App. 181, 185 (78 SE2d 861) (1953). At a minimum, the reservation of rights must fairly inform "the insured that, notwithstanding [the insurer's] defense of the action, it disclaims liability and does not waive the defenses available to it against the insured." *State Farm Mut. Auto. Ins. Co. v. Anderson*, 104 Ga. App. 815 (123 SE2d 191) (1961). See also *Jacore Systems v. Central Mut. Ins. Co.*, 194 Ga. App. 512, 513 (1) (390 SE2d 876) (1990). The reservation of rights should also inform the insured of the specific "basis for [the insurer's] reservations about coverage, [cit.]" *Jacore Systems v. Central Mut. Ins. Co.*, supra at 514 (1) (a) (citing *State Farm Mut. Auto. Ins. Co. v. Anderson*, supra at 818-819). See also *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 219-220 (1) (231 SE2d 245) (1976). The statement of a claims adjuster for GuideOne that it did not see coverage but would have to see if there would be coverage issues failed to comply with those requirements and, therefore, failed to "fairly inform" the Church of GuideOne's position.

That failure is not overcome merely by the prior reservation of rights by GuideOne's sister company in a similar lawsuit in another jurisdiction that involved a policy which, although identical in substance, was not actually the same policy at issue here. "[F]or a reservation of rights to be effective, the reservation must be unambiguous; if it is ambiguous, 'the purported reservation of rights must be construed strictly against the insurer and liberally in favor of the

insured.' [Cit.]" *Canal Ins. Co. v. Flores*, 524 FSupp.2d 828, 834 (II) (B) (W.D. Tex. 2007). See also 1 Judith F. Goodman & Sue C. Jacobs, *Law and Prac. of Ins. Coverage Litig.* § 8:9. Even if the prior reservation of rights is considered in conjunction with the adjuster's statement in this case, the two communications are, at best, ambiguous because only the former effectively reserved the rights of an insurer to withdraw, and then only the rights of a different, though related, insurance company in a separate action which involved a distinct policy. *Canal Ins. Co. v. Flores*, supra at 835 (II) (B). Moreover,

> "[t]he insurer's conduct in this respect operates as an estoppel to later contest an action upon the policy, regardless of the fact that there has been no misrepresentation or concealment of material facts on its part, and notwithstanding the facts may have been within the knowledge of the insured equally as well as within the knowledge of the insurer."

*Jones v. Ga. Casualty & Surety Co.*, supra at 185-186.

> [E]ven an insured who has actual knowledge of the contents of his policy and the possibility that the company might deny coverage when a claim is first asserted reasonably relies upon the provision of a defense without reservation of rights as an indication that the company has waived the coverage issue.

*Knox-Tenn Rental Co. v. Home Ins. Co.*, 2 F3d 678, 682 (I) (6th Cir. 1993).

Accordingly, in answer to the first question, we conclude that, although a reservation of rights is not required to be in writing, an insurer does not effectively reserve its rights to deny coverage under the circumstances set forth in that question, and that instead a more unequivocal reservation of rights, as discussed above, is necessary. This answer requires that we proceed to the second question.

2. Where, as here, there was no effective reservation of rights, whether the insurer is estopped from asserting noncoverage depends upon whether, with actual or constructive knowledge of noncoverage, it assumed or continued the defense of a suit against its insured. *Prescott's Altama Datsun v. Monarch Ins. Co. of Ohio*, supra. In some jurisdictions, such estoppel also depends on a showing of prejudice. "However, there are no universally accepted rules. [Cit.]" *Arceneaux v. Amstar Corp.*, 969 S2d 755, 768 (La. App. 2007).

> Three different views currently exist among the jurisdictions regarding the requirement of demonstrating preju-

dice: Some jurisdictions take the view that where an insurer, without reservation of rights and with actual or presumed knowledge, assumes the exclusive control of the defense of claims against the insured, it cannot thereafter withdraw and deny liability under the policy on the ground of noncoverage, prejudice to the insured by virtue of the insurer's assumption of the defense being, in this situation, conclusively presumed. In other jurisdictions, the issue as to prejudice has been met directly, without resort to a presumption, by merely holding that the loss of the right of the insured to control and manage the defense is, in itself, prejudice without any further proof. Under a third view, where an insurer defends an action on behalf of its insured with knowledge of (a) defense to coverage, as (a) general rule it is thereafter estopped from asserting that [the] policy does not cover [the] claim if the insured has demonstrated that it has been prejudiced by [the] insurance carrier's actions.

*Arceneaux v. Amstar Corp.*, supra at 767 (citing 14 Russ, supra, §§ 202:67-202:69). See also 44 AmJur2d *Insurance* § 1415. The first two views have been held to amount to the same thing and have sometimes been identified and adopted as the general or majority rule. *Safeco Ins. Co. v. Ellinghouse*, 725 P2d 217, 220-221 (Mont. 1986); Anno., 38 ALR2d 1148, § 2. See also *Knox-Tenn Rental Co. v. Home Ins. Co.*, supra at 684 (III) (applying Tennessee law). More important to this case, Georgia has been recognized as embracing those first two views. Philip W. Savrin and William H. Buechner, *A Perilous Prospect*, 46 No. 5 DRI for Def. 17 (2004).

In this state's seminal case, which was cited in *Prescott's*, the Court of Appeals of Georgia clearly joined those jurisdictions which hold that, in the circumstances presented by the Eleventh Circuit's second question, "'prejudice to the insured is conclusively presumed, or that the loss of the right to control and manage the case is itself sufficient prejudice to the insured.'" *Jones v. Ga. Casualty & Surety Co.*, supra at 186. See also *Vara v. Essex Ins. Co.*, supra (insurer "deemed" estopped to assert noncoverage); *Jacore Systems v. Central Mut. Ins. Co.*, supra at 513 (1) (insurer "'"precluded"'" from setting up noncoverage); *Knox-Tenn Rental Co. v. Home Ins. Co.*, supra (the rule establishes "a conclusive presumption of prejudice" "'by its very language . . . . Otherwise, there would be no necessity for its promulgation.' [Cit.]"); *Fidelity and Casualty Co. of N.Y. v. Riley*, 380 F2d 153, 156 (III) (5th Cir. 1967) (under *Jones*, "prejudice to the insured by the assumption and the conduct of the defense is conclusively presumed"); *Northwestern Nat. Ins. Co. v. R.S. Arm-*

*strong & Bros. Co.*, 627 FSupp. 951, 956 (D.S.C. 1985) ("Georgia authority indicates that prejudice to the insured is conclusively presumed when the insurance carrier assumes the defense of its insured. [Cits.]").

*Prescott's* is not contrary to this rule. Instead, this Court made a common, but critical, "distinction based upon a liability insurer's undertaking the defense of a suit against the insured . . . ." *Prescott's Altama Datsun v. Monarch Ins. Co. of Ohio*, supra. See also *Jones v. Ga. Casualty & Surety Co.*, supra (insurer who " 'takes charge of the defense' " estopped from questioning the claim as beyond the terms of the policy). As the courts and treatises have explained, generally

> an insured seeking to bar an insurer from raising a defense of noncoverage after participating in the insured's defense must show prejudice but that: "Where an insurer, without reservation and with actual or presumed knowledge, assumes the exclusive control of the defense of the claims against the insured, it cannot thereafter withdraw and deny liability under the policy on the ground of noncoverage, prejudice to the insured by virtue of the insurer's assumption of the defense being, in this situation, conclusively presumed." [Cit.]

*Knox-Tenn Rental Co. v. Home Ins. Co.*, supra. In *Prescott's*, supra, the liability insurer merely participated in the insured's defense by entering an appearance, which "alone does not create an estoppel. [Cit.]" Thus, the insurer there did not "actually undertake the legal defense of the insured . . . ." *Southeastern Color Lithographers v. Graphic Arts Mut. Ins. Co.*, 164 Ga. App. 70, 72 (2) (296 SE2d 378) (1982) (cited in *Prescott's*). Therefore, this Court had to determine whether the insured "demonstrate[d] how [the insurer's limited] participation . . . prejudiced [the] defense of [the] suit" against the insured. *Prescott's Altama Datsun v. Monarch Ins. Co. of Ohio*, supra at 319.

Similarly, in the two other Georgia cases noted by the Eleventh Circuit as offering some guidance regarding what constitutes a sufficient showing of prejudice, the insurer could not be said to have assumed and conducted defense of a suit against the insured. In one of the cases, decided prior to *Prescott's*, there is no indication that the attorney hired by the insurer did anything more than enter an appearance. The Georgia Court of Appeals quoted law regarding " '[a]n entry of *an appearance* for the insured by the insurer' " (emphasis in original), held that "[t]here is no estoppel by virtue of the fact that [the] attorney for [the insurer] entered an appearance for the insured," and went on to determine whether prejudice had

been shown. *Home Indemnity Co. v. Godley*, 122 Ga. App. 356, 361-362 (1) (177 SE2d 105) (1970). In the other case cited by the Eleventh Circuit, decided after *Prescott's*, the insurer did not even enter an appearance. Indeed, the Court of Appeals found that the insurer "did not retain counsel, file pleadings, or conduct a defense on behalf of [the insured,]" and then determined whether prejudice had been demonstrated. *Adams v. Atlanta Casualty Co.*, 235 Ga. App. 288, 290 (3) (509 SE2d 66) (1998).

However, where, as here, an insurer assumes and conducts an initial defense without effectively notifying the insured that it is doing so with a reservation of rights, the insurer is deemed estopped from asserting the defense of noncoverage regardless of whether the insured can show prejudice. As discussed above, this answer to the second question is demanded by Georgia precedent. The rationale underlying that precedent is that

> the insured has surrendered innumerable rights associated with the control of the defense including choice of counsel, the ability to negotiate a settlement, along with determining the timing of such negotiations, and the ability to decide when and if certain defenses or claims will be asserted. [Cit.]

*Northwestern Nat. Ins. Co. v. R.S. Armstrong & Bros. Co.*, supra. See also Savrin, supra. " '[T]he undertaking to defend may be of no value, but of great danger, to the insured if, after abandoning all control of the suit, he may yet be liable for a judgment against him.' [Cit.]" *Jones v. Ga. Casualty & Surety Co.*, supra. This rationale is fully applicable here, where GuideOne represented the Church until discovery was almost complete.

> "The course cannot be rerun, no amount of evidence will prove what might have occurred if a different route had been taken. By its own actions, [GuideOne] irrevocably fixed the course of events concerning the law suit for the first 10 months. Of necessity, this establishes prejudice." [Cit.]

*Safeco Ins. Co. v. Ellinghouse*, supra at 221. Thus, " 'though coverage as such does not exist, the insurer will not be heard to say so.' [Cits.]" *Bluestein & Sander v. Chicago Ins. Co.*, 276 F3d 119, 122 (B) (2nd Cir. 2002).

3. As a result of our answer to the second question, we need not reach the third question.

*Certified questions answered. All the Justices concur.*

DECIDED MAY 3, 2010.

*Ekonomou, Atkinson & Lambros, Andrew J. Ekonomou, Michael G. Lambros, Paul E. Nystrom III, Amy L. Hadra, Kenneth B. Hodges III,* for appellant.

*Weissman, Nowack, Curry & Wilco, Linda B. Foster, Rahul Karnani,* for appellee.

*William T. Maxson III,* amicus curiae.