# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2096

_____

National Surety Corporation

*Plaintiff - Appellee*

v.

Dustex Corporation

*Defendant - Appellant*

Miron Construction Co., Inc.; Board of Trustees of the Municipal Electric Utility
of the City of Cedar Falls, Iowa

*Defendant*s

_____

No. 15-2328

_____

National Surety Corporation

*Plaintiff - Appellee*

v.

Dustex Corporation

*Defendant*

Miron Construction Co., Inc.

*Defendant - Appellant*

Board of Trustees of the Municipal Electric Utility of the City of Cedar Falls, Iowa

*Defendant*

_____

Appeals from United States District Court
for the Northern District of Iowa, Waterloo

_____

Submitted: November 5, 2015
Filed: April 29, 2016

_____

Before SMITH, COLLOTON, and KELLY, Circuit Judges.

_____

SMITH, Circuit Judge.

This is an insurance-coverage dispute that began with an arbitration proceeding, expanded to state court, and eventually made its way to federal court. National Surety Corporation (NSC), a wholly owned subsidiary of Fireman's Fund Insurance Company[1] ("Fireman's Fund"), brought a declaratory-judgment action against Dustex Corporation ("Dustex"). Before the district court,[2] NSC sought a judicial determination that it did not have a duty to defend or indemnify Dustex in an arbitration proceeding, which, at the time, was pending before the American Arbitration Association (AAA). In response, Dustex argued, among other things, that NSC is estopped from denying coverage because it failed to give Dustex effective

_____

[1]NSC and Fireman's Fund will be referred to interchangeably. NSC issued the policy to Dustex, but Fireman's Fund adjusted the claims. The record generally refers to Fireman's Fund as the insurance provider and point of contact for Dustex.

[2]The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

-2-

notice that it was defending the arbitration action under a reservation of rights. Both Dustex and NSC moved for summary judgment. The district court granted partial summary judgment in favor of NSC, concluding that the insurance policy did not require NSC to defend or indemnify Dustex in the underlying arbitration action. But on the estoppel claim, the district court held that there were "complex disputed questions of material fact on which summary judgment cannot be granted."

After the district court determined that no right to a jury trial existed on the estoppel claim, it referred the matter to a magistrate judge to conduct an evidentiary hearing on Dustex's affirmative defense. Applying Iowa law, the magistrate judge issued a report and recommendation finding that "NSC gave Dustex timely and adequate notice that it was defending this claim under a reservation of rights." The magistrate judge found "that Dustex knew, or should have known, that NSC was defending in the arbitration action under a reservation of rights." The district court accepted the report and recommendation, concluding that Dustex failed to establish the affirmative defense of estoppel. On appeal, Dustex raises two arguments: (1) the district court erred by applying Iowa law rather than Georgia law to the estoppel claim, and (2) the district court erred in finding that Dustex failed to establish its affirmative defense of estoppel. We affirm.

## I. *Background*

In 2006, Cedar Falls Utilities (CFU), also known as the Municipal Electric Utility of the City of Cedar Falls, Iowa, executed an agreement with Miron Construction Company, Inc. ("Miron") for an environmental upgrade to one of its coal power plants. The multimillion-dollar project included the installation of a "baghouse" to collect emissions from the coal-fired boiler. Miron then contracted with Dustex to construct the baghouse equipment for $1.83 million.

By the end of 2007, CFU refused to sign a certificate of substantial completion because it had concerns regarding the performance of the baghouse. Dustex, Miron,

and CFU met in 2008, and again in 2009, to resolve the dispute, but they were unable to reach a resolution.

In August 2009, Miron filed an arbitration demand against CFU with the AAA, seeking $475,000 due under the contract. CFU countered, claiming damages against Miron for breach of contract in the amount of $1.46 million. In November 2010, CFU sought to compel Dustex to participate in the arbitration action. After Dustex's attorney, William L. Sitton, Jr., responded, but before the arbitrator ruled on the motion, CFU filed a declaratory-judgment action in Iowa state court, seeking an order compelling Dustex to participate.

Two days after Dustex was served with the state-court petition, Sitton informed Dustex's insurance agent, by note, that CFU had filed two arbitration claims against Dustex in Cedar Falls, Iowa. Sitton was mistaken on this point, and he later acknowledged that only CFU's motion seeking to compel Dustex's participation in the arbitration was actually before an arbitrator. The declaratory-judgment action pending against Dustex in state court sought to compel arbitration but was not itself an arbitration proceeding. Sitton's note to the insurance agent also described the nature of the dispute and identified likely issues. The insurance agent forwarded Sitton's note to Brian McCoy, an adjuster with Fireman's Fund. McCoy created a file regarding Sitton's note on December 17, 2010. On December 22, 2010, McCoy called Sitton and advised him that the arbitration appeared to be based on an alleged breach of contract. According to his file notes, McCoy questioned whether Dustex would be covered under the policy. Sitton responded that there was more to the claim than simply breach of contract. The same day as McCoy's call, Sitton e-mailed Patrick Paul, Dustex's President. Sitton advised Paul about his exchanges with McCoy regarding coverage for the occurrence. Sitton told Paul that he had been sending information that the CFU–Miron arbitration may raise issues affecting property damage and advertising injury to the adjuster.

The next day, December 23, McCoy noted in the open file that after reviewing the complaint in the arbitration action, he believed that the occurrence was not covered. On that day, Sitton followed up with McCoy by e-mail, reporting on certain aspects of CFU's declaratory-judgment action and arbitration claim. Sitton asked Fireman's Fund to retain an attorney with experience in construction litigation. Sitton acknowledged that Dustex understood Fireman's Fund would be proceeding under a reservation of rights.

A few days later, McCoy backtracked on his initial coverage evaluation. He noted in his file that after taking another look at the policy, Dustex may be owed a defense under a reservation of rights because CFU appeared to be alleging property damage. For the same reason, another Fireman's Fund employee noted in the file that Dustex was owed a defense under a reservation of rights. Initially, Fireman's Fund retained an attorney from the Duncan Green law firm in Des Moines to handle the matter on behalf of Dustex. McCoy sent an e-mail to Dustex advising of Duncan Green's representation of Dustex's interests in the matter. In the subject line, McCoy referenced the state court declaratory-judgment action. No mention was made of the separate arbitration action. Sitton responded by thanking Fireman's Fund for its decision "to defend this claim under a reservation of rights." Sitton also asked about the attorney's qualifications. Specifically, Sitton expressed concern that the attorney selected lacked experience in construction litigation and AAA arbitration. As a result, the case was reassigned to a different attorney at Duncan Green who better met Dustex's qualification requirements. After the reassignment, Sitton wrote Paul that the defense torch was passed to an attorney who could protect Dustex's interests in both pending matters. Similarly, Sitton informed CFU's attorney that Dustex's insurance company had retained counsel on Dustex's behalf to represent it in the declaratory-judgment action and the arbitration claim that Miron had filed.

On March 17, 2011, McCoy, on behalf of Fireman's Fund, sent the first official reservation-of-rights letter to Dustex. The first sentence of the letter referred to the

state court declaratory-judgment action. Inexplicably, the second sentence stated that Fireman's Fund would be unable to defend or indemnify Dustex in that matter. At the time, Fireman's Fund was already providing a defense in the state court action. Moreover, because it was a declaratory-judgment action, no need existed for Fireman's Fund to indemnify Dustex. McCoy later admitted that the second sentence was a mistake and should not have been included in the letter. The letter additionally described the allegations contained in both the state court declaratory-judgment action and the arbitration action.

In the second paragraph, McCoy's letter described the claims that CFU made in the pending arbitration action. The letter then notified Dustex that Fireman's Fund lacked sufficient information to make a coverage decision on the claims. McCoy stated that Fireman's Fund would gather more information as soon as possible and promptly notify Dustex of its decision. Finally, the letter advised Dustex that the investigation was being conducted under a full reservation of rights available under the policy and the law. The next seven pages of the letter set forth the applicable policy provisions. In its conclusion, the letter invited Dustex to contact McCoy if it had any questions regarding the matter. Paul, on behalf of Dustex, testified that the letter's inconsistency regarding Fireman's Fund's intent to defend confused him. Because the letter indicated Fireman's Fund would gather the needed information and get back to Dustex, Paul decided that he would take no action and see what happened. Neither Paul nor Sitton contacted McCoy for clarification.

In April 2011, the state court granted CFU declaratory relief and ordered Dustex to participate in the arbitration action, an outcome anticipated by both Sitton and Martin Kenworthy—the attorney at Duncan Green designated to defend Dustex. Kenworthy seamlessly continued his representation of Dustex in the arbitration action. Before the arbitration hearing that was scheduled for the beginning of 2013, CFU amended its statement of claims three times. By the third amended statement of claims, the damages that CFU alleged that it had suffered had risen

dramatically—CFU now claimed an amount in excess of $6.5 million, plus more than $1 million in lost revenue and $576,000 in liquidated damages.

As the arbitration meeting was approaching, Sitton e-mailed Kenworthy that he wanted to participate in preparing Paul and Dustex's Vice President of Engineering for their upcoming depositions. Sitton later disclosed in an e-mail to Dustex that this was done to verify whether the reservation of rights was limited to the state court declaratory-judgment action or also applied to the arbitration action. The e-mail stated, in part:

> *Don't forward this email to any other individual. Reply only to me. Two more points.* First, Fireman's Fund is "locked in" in my opinion, to not only defending this arbitration claim but in paying any award that could or might be entered against Dustex, up to the limit of the policies. Although you received the customary "reservation of rights" . . . letter, FF has done nothing since then to put you on notice that the coverage does not apply. I recently did something to verify the truthfulness of that statement. I asked Kenworthy if I could participate in 1 or 2 depositions and conduct your examination and McKenna's examination at arbitration. If FF believe[s] they had an "out" as to coverage, I would have immediately been told: "Sure. No problem. Do as much as you want." Instead, Marty [Kenworthy] forwarded the request. There has still not been an answer. FF will continue to pay Marty, the experts and AAA, through the conclusion of this matter. If an award is entered against Dustex, FF will pay it.

The January 2, 2013 arbitration meeting failed to result in a settlement.[3] Shortly after the meeting, and after several internal communications, Fireman's Fund instructed McCoy to call Sitton and remind him of the reservation of rights, which would be supplemented by another letter. When McCoy spoke with Sitton, Sitton told

---

[3]In a decision dated October 28, 2013, the arbitrator awarded CFU $2.6 million, plus fees of $748,659 and arbitration costs of $71,038.29.

-7-

McCoy that "the cow has left the barn" on that issue. On January 9, 2013, Fireman's Fund sent Dustex what it described as a supplement to the March 17, 2011 letter. The subject line on the letter was the caption in the arbitration action, and the letter stated that Fireman's Fund issued the supplemental reservation of rights with respect to CFU's second amended statement of claims. As already noted, however, by then, CFU's second amended statement had been superseded by a third amended statement of claims. Fireman's Fund realized its error, and on January 11, 2013, it sent a corrected reservation-of-rights letter. Three days later, Fireman's Fund filed the instant declaratory-judgment action to determine whether it had a duty to defend or indemnify Dustex in the arbitration action.

## II. *Discussion*

As a threshold matter, Dustex asks us to hold that Georgia law is the governing law for its argument that NSC is estopped from denying coverage because NSC gave inadequate notice of its reservation of rights. Dustex argues that the choice of law is significant but not so significant that the use of Iowa versus Georgia law would be outcome determinative. Dustex posits scenarios in which it wins regardless of which state law applies based on features of each state's law. We agree that the choice of law itself is not dispositive but not for the same reason. The materiality of the differences in the two states' applicable law is dependent on the district court's factual findings. These findings regarding what Dustex knew are pivotal to any analysis of the applicability of estoppel because justifiable reliance is required under the estoppel precedent of both Georgia and Iowa. We review these factual findings under the familiar and deferential clearly erroneous standard. *See* Fed. R. Civ. P. 52(a)(6). Under either Georgia or Iowa law, the district court did not clearly err in finding that Dustex knew or should have known that Fireman's Fund was proceeding under a reservation of rights.[4]

---

[4]Georgia law takes on significance in this case only if we determine that the district court clearly erred in finding that Fireman's Fund gave effective notice that

In a suit with an insurer, estoppel is an equitable remedy that prevents the insurer from profiting when it causes the insured to justifiably rely to its detriment on the insurer's words or conduct. *See Allstate Ins. Co. v. Sapp*, 477 S.E.2d 869, 871 (Ga. Ct. App. 1996) (holding that "[e]stoppel requires justifiable reliance on the opposing party's representations or conduct and a change in position to one's detriment" (citation omitted)); *Sanborn v. Md. Cas. Co.*, 125 N.W.2d 758, 762 (Iowa 1964) (reiterating that equitable estoppel "is based upon the idea that one who has made a certain representation should not thereafter be permitted to change his position to the prejudice of one who has relied on it" (citations omitted)). The affirmative defense of estoppel will fail in both Iowa and Georgia if the insurer provides the insured with an effective reservation of rights. *See World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*, 695 S.E.2d 6, 9 (Ga. 2010) (holding that an "insurer can avoid estoppel by giving timely notice of its reservation of rights which fairly informs the insured of the insurer's position" (quotations and citations omitted)); *Talen v. Emp'rs Mut. Cas. Co.*, 703 N.W.2d 395, 409 (Iowa 2005) (recognizing that "when an insurer gives prompt notice to the party claiming to be insured that it is not waiving the benefit of any policy defenses, no estoppel arises" (citations omitted)).

Dustex argues that *World Harvest's* admonition that an insurer provide "the specific 'basis for [the insurer's] reservations about coverage'" renders Fireman's Fund's reservation-of-rights letter ineffective. *See* 695 S.E.2d at 10 (alteration in original) (citation omitted). Even if this admonition is interpreted as a mandate, *cf. Wellons, Inc. v. Lexington Ins. Co.*, 566 F. App'x 813, 821–22 (11th Cir. 2014) (reading "*World Harvest . . .* to *require* the insure[r] to fairly inform the insured that

_____

it was proceeding under a reservation of rights. Dustex contends that under *World Harvest*, prejudice is presumed where an insurer fails to effectively reserve its rights. Prejudice is not presumed under Iowa law and must be proved by clear, convincing, and satisfactory evidence. *See Anita Valley, Inc. v. Bingley*, 279 N.W.2d 37, 41 (Iowa 1979).

it is defending under a reservation of rights, but to only *recommend* that the insurer provide the specific basis for the reservation"), our review of the district court's findings does not indicate that Fireman's Fund failed to provide Dustex with an effective reservation of rights that included a specific basis for Fireman's Fund's reservations about coverage.

Fireman's Fund effectively reserved its right to deny Dustex coverage under the insurance policy, though it certainly could have done so more definitively. In an early e-mail, Dustex thanked Fireman's Fund for its decision to defend "this claim" under a reservation of rights. Dustex claims that it understood "this claim" to refer only to the state court declaratory-judgment action that CFU had filed. According to Dustex, it did not know that Fireman's Fund was reserving its right to deny coverage with respect to the arbitration proceeding. The district court did not accept Dustex's explanation and found that Dustex understood "this claim" to include the arbitration action. This finding is not clearly erroneous.

Days after thanking Fireman's Fund for its decision to defend "this claim" under a reservation of rights, Sitton informed Dustex that Kenworthy was qualified to "protect your interests in both pending matters." Sitton then sent a similar e-mail to CFU, notifying it that Fireman's Fund had "retained counsel on behalf of Dustex to represent it in the declaratory judgment action and the arbitration claim." As the magistrate judge noted, it would defy logic for Dustex to believe that Fireman's Fund only reserved its right to deny policy coverage in a declaratory-judgment action where no damages were being sought. Instead, the communications between Fireman's Fund and Dustex show that the policy questions focused on the arbitration proceeding. CFU filed the state court declaratory-judgment action to compel Dustex's participation in the arbitration action—the only proceeding that had insurance-coverage implications. On these facts, Dustex's and Fireman's Fund's linkage of the arbitration and the state court case in their correspondence stands to reason.

-10-

Further, Fireman's Fund sent a reservation-of-rights letter to Dustex on March 17, 2011. Unfortunately, the letter contained errors. Nevertheless, those errors did not vitiate the notice to Dustex that Fireman's Fund was proceeding under a full reservation of rights. After describing the circumstances underlying the claims that CFU made in the pending arbitration action, the letter stated that Fireman's Fund was unable to presently make a decision whether "a claim arising out of this incident" was covered by the insurance policy. Fireman's Fund then advised Dustex that it was proceeding "under a full reservation of all rights available under the policy and the law." At the end of the letter, Dustex was invited to contact McCoy if it had any questions or wished to discuss the matter. Dustex did not contact McCoy. Finally, Sitton's e-mail leading up to the January 2, 2013 arbitration hearing confirms the district court's finding. Sitton told Paul that Fireman's Fund was "locked in" because, although Fireman's Fund sent the March 17 reservation-of-rights letter, it had "done nothing since then to put [Dustex] on notice." This mistaken advice assumes that Fireman's Fund would need to renew its reservation of rights. Fireman's Fund did not have such an obligation. The e-mail is further evidence that Dustex knew that Fireman's Fund was proceeding under a full reservation of rights.

After reviewing the record in full, we are not "left with the definite and firm conviction that a mistake has been committed." *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

-11-